**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **BRIAN OLIVER,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 4:23-CV-100 PLC |
| | ) |
| **MARTIN O'MALLEY,**[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|        **Defendant,** | ) |

**MEMORANDUM AND ORDER**

Plaintiff Brian Oliver seeks review of the decision of Defendant Social Security Commissioner Martin O'Malley, denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.    Background and Procedural History**

On October 20, 2020, Plaintiff filed an application for DIB, alleging he was disabled as of January 31, 2020, due to birth defect—hernia in right side, diabetes, herniated disc C spine, nerve damage from herniated discs, fibromyalgia, neuropathy, arthritis in hip and hands, sleep issues, neck and back pain, and vision problems--floaters. (Tr. 77-81, 176-177) The Social Security Administration ("SSA") denied Plaintiff's claim initially in March 2021, and upon reconsideration in June 2021. (Tr. 95-98, 106-109) Plaintiff filed a timely request for a hearing before an

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the Defendant in this suit. *See* 42 U.S.C. § 405(g).

1

administrative law judge ("ALJ").  (Tr. 115-116)  The SSA granted Plaintiff's request for review and conducted a hearing in December 2021.  (Tr. 44-75)

In a decision dated December 15, 2021, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from January 31, 2020, through the date of this decision."  (Tr. 27)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, and submitted new evidence with his request.  (Tr. 7-18)[2]  The Appeals Council declined to consider Plaintiff's newly submitted evidence, stating as follows:

> You submitted 13 pages of records from St. Joseph Hospital West dated February 9, 2022.  The Administrative Law Judge decided your case through December 15, 2021. This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before December 15, 2021.

(Tr. 2)[3]  The Appeals Council denied Plaintiff's request for review on December 8, 2022.  (Tr. 1-6)

Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

II.     **Evidence Before the ALJ**

Plaintiff, born November 5, 1959, testified that he lived in a house with his girlfriend.  (Tr. 50)  Plaintiff received an associate's degree in electronics, a bachelor's degree in business administration, and a "mini MBA."[4]  (*Id.*).

---

[2] Specifically, Plaintiff submitted the results from an electromyography ("EMG") and nerve conduction study ("NCS) he underwent on February 9, 2022, and a February 10, 2022 clinic note from Plaintiff's treating neurologist, Dr. Prityi Rani.  (Tr. 7-18)

[3] The Appeals Council suggested that should Plaintiff wish the Council to consider the new evidence, he must file a new claim.  (Tr. 2)

[4] Plaintiff explained that his MBA was only good within the company with which he was previously employed, Lucent Technologies.  (Tr. 50)

In his most recent position, Plaintiff worked as an engineering project manager. (Tr. 51) As to his specific responsibilities, Plaintiff stated as follows: "I would assign projects and functions within our engineering resources on a project basis or on a site-by-site basis to a series of either Alcatel-Lucent, Nokia engineers or contract engineers that would then perform that function." (Tr. 52) Regarding the physical demands of his job, Plaintiff stated he spent most of his time seated at his desk, using phones and computers to monitor activities in the field. (Tr. 54) He estimated that he spent six or more hours per day sitting at a computer, but would stand or shift positions throughout the day to ease his pain. (Tr. 54-55, 59-60) Despite his limitations, Plaintiff acknowledged that he was never disciplined for failing to meet his employment requirements. (Tr. 65) Plaintiff stated he received an early retirement package as part of a forced reduction, and he was not offered any opportunity to transfer to another position. (Tr. 55-56)

Plaintiff testified that while he tried to help with household chores, his girlfriend did the majority. (Tr. 66) He said he straightens up around the house, mows the lawn with a riding mower, uses the trimmer, helps load the dishwasher, and engages in light cooking. (Tr. 66-67) Recreationally, Plaintiff testified that he watches television, listens to music, goes fishing "depending on what the pain levels are that day", and tries to get some exercise, meaning light walking. (Tr. 67)

Plaintiff testified that he experiences "constant to shooting pain to burning" radiating from his neck into both shoulders. (Tr. 60) He stated he has burning, weakness, and tingling in his hands on a daily basis. (Tr. 60-61) He further claimed to have burning, shooting pain in his hips, mid- to lower-back, and feet. (Tr. 61-62) Plaintiff went to physical therapy in March 2021, but said it provided no relief. (Tr. 62) Finally, Plaintiff testified that he was unwilling to undergo a

3

nerve conduction study, because he underwent two in the 1990s and suffered "weeklong agony" as a result. (Tr. 62-63)

A vocational expert also testified at the hearing. (Tr. 69-74) The ALJ asked the vocational expert to consider a hypothetical individual the same age, education, and work experience as Plaintiff, with the following limitations:

> [The individual] is able to perform light work occasionally and light work defined as exerting 20 pounds of force occasionally, or 10 pounds of force frequently, or negligible amounts of force constantly to move objects. Stand or walk for up to six hours in an eight hour workday or sit for up to six hours in an eight hour workday with normal breaks, never climb ladders, ropes, or scaffolds. Occasionally, climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. Frequently, feel and finger on the right.

(Tr. 70) The vocational expert stated that such an individual would be able to perform Plaintiff's past work. (Tr. 71) She noted that should the individual's ability to handle be reduced to occasional, he would not be able to return to Plaintiff's past position. (*Id.*) The vocational expert stated employers generally would not tolerate more than one unexcused absence per month, and that the number of routine rest or break periods and tolerance for off-task behavior would vary by employer. (Tr. 72)[5] Upon questioning from Plaintiff's attorney, the vocational expert stated that should the hypothetical individual be limited to simple, routine, repetitive work, then he would not be able to perform Plaintiff's past work. (Tr. 73)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Statement of Uncontroverted Material Facts, which the Commissioner admitted with certain clarifications and additions. (ECF Nos. 10-1, 13-1) The Court also adopts the facts set forth in the Commissioner's Statement of Additional Facts, as Plaintiff did not refute them. (ECF No. 13-

---

[5] The vocational expert testified that because Plaintiff was in a professional position, employers generally rely on output and completed tasks to judge performance. (Tr. 72)

4

1) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.     Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in [§ 404.1509], or a combination

5

of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV.   The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since January 31, 2020, the alleged onset date; and (2) had the severe impairments of degenerative disc disease/degenerative joint disease and diabetes with peripheral neuropathy, that significantly limited his ability to perform basic work activities as required by SSR 85-28.[6] (Tr. 28) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30-31)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 32-33) The ALJ described Plaintiff's medical records in detail, noting providers often recorded that Plaintiff's diabetes was under control and he exhibited normal gait, sensation and strength. (Tr. 33-36) The ALJ noted that

---

[6] The ALJ noted that Plaintiff alleged disability in part due to herniated discs. (Tr. 29) He deemed the allegation a "nonmedically-determinable impairment[]", however, as "the current imaging does not show herniated discs." (*Id.*) Furthermore, "the claimant repeatedly refused to undergo a nerve conduction study due to pain he experienced during the testing in 1992 so there is no current evidence to determine an etiology related to paresthesia." (*Id.*)

7

Plaintiff repeatedly refused to undergo EMG testing or a nerve conduction study. (*Id.*) He further stated that Plaintiff's recommended treatment was conservative, the evidence did not show a worsening in his conditions at the time of the alleged onset date, and Plaintiff "ceased working due to an elimination of his position, not due to physical health problems." (Tr. 37-38)[7]

The ALJ then turned to the medical opinions in the record. He summarized Dr. Donald Nelson's[8] assessment as follows:

> [Dr. Nelson] felt the claimant could occasionally lift and/or carry 25 pounds and frequently lift and/or carry 20 pounds. He stated the claimant could stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour work day with normal breaks. He said he could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds. He noted neck pain and remote imaging of herniated discs with no significant objective findings of limitations in recent exams. He noted normal gait, sensation, and coordination. He noted that an April 2019 exam described decreased sensation in the lower extremities but several subsequent exams showed normal sensation. He also noted his neuropathic symptoms were generally controlled. He found no evidence of uncontrolled diabetes. He states that "compassionate limits" were given secondary to degenerative disc disease and related pain.

(Tr. 36) The ALJ found that Dr. Nelson's March 4, 2021 medical source statement somewhat persuasive, because although the medical evidence was consistent with an ability to sit, stand, and walk at the light exertional level, the evidence showed greater limitations in lifting than Dr. Nelson assessed due to Plaintiff's back and neck pain. (*Id.*) The ALJ further determined that exertional as well as manipulative limitations were warranted due to Plaintiff's right hand pain. (*Id.*)

The ALJ next considered the June 14, 2021 opinion of Dr. Harry Cole.[9] (Tr. 36-37) The ALJ noted that Dr. Cole prescribed greater lifting limitations than Dr. Nelson, but otherwise concurred with his opinion. (*Id.*) The ALJ found Dr. Cole's opinion generally persuasive, as

---

[7] Plaintiff told a treating provider that his concern was getting disability, since he was laid off from his position and forced into early retirement. (Tr. 361)
[8] Dr. Nelson offered an opinion in a prior administrative medical determination. (Tr. 36, 77-81)
[9] Dr. Cole offered an opinion in a reconsideration determination. (Tr. 36, 83-88)

8

"[t]he further limitations in lifting and carrying are consistent with [Plaintiff's] cervical degenerative disease with moderate central canal narrowing", and "Dr. Cole supported his opinions by addressing the more recent imaging and tenderness of the hips in an examination." (Tr. 37)  The ALJ noted that he included additional limitations in Plaintiff's RFC, however, "due to reduced range of motion of the cervical and lumbar spine and facet pain[.]" (*Id.*)

Finally, the ALJ summarized the February 24, 2021 opinion of Dr. Bobby Enkvetchakul as follows:

> [Dr. Enkvetchakul] stated that he was unable to find evidence of significant pathology that would require activity limitations or restrictions.  He found no reason the claimant could not sit during a normal 8-hour workday with usual breaks.  He found no evidence of any limitations in standing, walking, or carrying.  He also found no limitations in reaching or lifting other than [Plaintiff's] self-expressed limitations.  He said [Plaintiff] should have no trouble handling objects, speaking, or hearing.  He saw no reason [Plaintiff] could not get to and from a workplace.

(Tr. 37)  The ALJ found Dr. Enkvetchakul's opinion was not persuasive, as "[t]he imaging results showing moderate central canal stenosis and labral separation of the left hip are consistent with some limitations in [Plaintiff's] ability to stand, walk, and carry." (*Id.*)  Furthermore, while Dr. Enkvetchakul "supported his opinions with his review of the prior medical records and the unremarkable findings of the physical examination he conducted, there were subsequent medical records that showed some abnormalities in the imaging as well as tenderness and limitations in range of motion that would support some limitations in [Plaintiff's] functioning." (*Id.*)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform light work, except that:

> [H]e can exert 20 pounds of force occasionally, or 10 pounds [of] force frequently or negligible amount of force constantly to move objects.  He can stand/walk for up to 6 hours in an 8-[hour] workday or sit for up to 6 hours in an 8-hour workday with normal breaks.  He can never climb ladders, ropes, or

9

> scaffolds.  He can occasionally climb ramps and stairs, balance, stoop,  kneel, crouch, and crawl.  He can frequently handle and finger on the right.

(Tr. 31)  Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform his past relevant work as a project manager, as "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" (Tr. 38)[10]  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 31, 2020, through the date of his decision.  (Tr. 39)

V.    **Discussion**

Plaintiff claims the ALJ erred because the record as a whole, including the new evidence submitted to the Appeals Council, (1) does not support the ALJ's finding regarding Plaintiff's severe impairments; and (2) does not support the ALJ's RFC finding.  (ECF No. 10)  The Commissioner counters that (1) remand is not required based on the evidence submitted to the Appeals Council, and (2) the ALJ properly formulated Plaintiff's RFC and found he was not disabled.  (ECF No. 13)

A.    Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id*. (internal quotation marks and citations omitted).

---

[10] The ALJ found Plaintiff was able to perform his past relevant work "as actually and generally performed." (Tr. 38)

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Severe Impairments Determination

Plaintiff asserts the ALJ's finding regarding Plaintiff's severe impairments is not supported by the record as a whole, including the new evidence. (ECF No. 10, P. 4) Specifically, Plaintiff notes that while the ALJ listed degenerative disc disease/degenerative joint disease and diabetes with peripheral neuropathy as severe impairments, the February 9, 2022 EMG and NCS "showed that Plaintiff had right sensory carpal tunnel syndrome, bilateral ulnar neuropathy at the elbow, absent ulnar sensory potentials at Guyon's canal, and axonal sensory and motor peripheral neuropathy." (*Id.*, citing Tr. 11)[11] Plaintiff maintains the EMG and NCS confirmed multiple impairments, and the ALJ should be given the opportunity to consider the results. (*Id.*)

The Court agrees with the Appeals Council that Plaintiff's evidence of new diagnoses does not relate to the time period at issue before the ALJ. Plaintiff did not reference these conditions as possible disabling impairments, and thus there was no reason for the ALJ to discuss the conditions and no error when he failed to do so.

C. RFC Determination

---

[11] Plaintiff notes the doctor interpreting his test results also stated he could not exclude right L5 radiculopathy. (ECF No. 10, P. 4)

11

Plaintiff asserts the ALJ's RFC finding is not supported by the record as a whole, including the new evidence. (ECF No. 10, PP. 4-5)  RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). While the Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Plaintiff claims that substantial evidence does not support the ALJ's decision, because the ALJ did not have the benefit of the results of his February 2022 EMG and NCS or Dr. Rani's commentary thereon, both of which were submitted to the Appeals Council. The Commissioner counters the evidence is not a basis to reverse the ALJ's decision because: (1) the report does not

constitute new, material evidence relating to a time period before the ALJ's decision, and (2) substantial evidence as a whole supports the entire ALJ opinion.

Social Security regulations provide that the Appeals Council "must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (citing 20 C.F.R. § 404.970(b)).  The newly submitted evidence becomes part of the administrative record, even though it was not originally included in the record before the ALJ.  *Id.* (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)).  "If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case."  *Id.* (citing 20 C.F.R. § 404.970(b)).

In this case, the Appeals Council considered the newly submitted evidence and determined that it "does not relate to the period at issue", and therefore "does not affect the decision about whether [Plaintiff was] disabled beginning on or before December 15, 2021."  (Tr. 2)  In such circumstances, the Court does "not evaluate the Appeals Council's decision to deny review, but rather [it] determine[s] whether the record as a whole, including the new evidence, supports the ALJ's decision."  *Cunningham*, 222 F.3d at 500 (citation omitted).  *See also Fields v. Saul*, No. 4:18-CV-1973 RWS, 2019 WL 5887354, at *3 (E.D. Mo. Nov. 12, 2019) (same).

Plaintiff acknowledges that the EMG and NCS were completed nearly two months after the ALJ's decision.  He maintains the new evidence is significant, however, given that the ALJ noted nine (9) times that Plaintiff failed or refused to undergo nerve conduction studies.  (ECF No. 10, P. 5)  Plaintiff thus posits that "the test results relate directly to the ALJ's findings regarding his symptom severity and his residual function capacity."  (*Id.*)

13

"The timing of an examination is not dispositive of whether evidence is material; medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Cunningham*, 222 F.3d at 502 (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)).  The Court need not decide whether the newly submitted medical records relate to Plaintiff's condition prior to the date of the ALJ's decision, however, because it finds the ALJ's decision is supported by substantial evidence in the record as a whole even taking the new evidence into account.  *See Mattingly v. Kijakazi*, No. 4:20-CV-1225-SPM, 2022 WL 823056, at *5 (E.D. Mo. Mar. 18, 2022).

In his opinion, the ALJ underwent an exhaustive analysis of Plaintiff's medical records. (Tr. 33-36)  He noted that Plaintiff had generally unremarkable physical examinations, and the recommended treatment was conservative.  (Tr. 37-38)  The ALJ further considered Plaintiff's reported daily activities, and found they were inconsistent with his allegations concerning the intensity, persistence and limiting effects of his ailments.  (Tr. 32-33)  The ALJ then stated as follows:

> The claimant ceased working due to an elimination of his position, not due to physical health problems.  Though he indicated he had experienced pain at his current [job] for three or more years, the claimant continued working during that time, which supports his ability to perform work activity.  The evidence does not show a worsening in his conditions at the time of the alleged onset date….He told a treatment provider that his concern was getting disability after being laid off from his job and forced into early retirement.

(Tr. 38)  Finally, the ALJ afforded varying degrees of persuasiveness to the medical opinions in the record, but ultimately placed greater restrictions than any provider recommended in Plaintiff's RFC.  (Tr. 31, 36-37)

14

Upon consideration, the Court finds the ALJ's RFC determination is supported by substantial evidence in the record as a whole, even after review of the new records.[12] *See Fields*, 2019 WL 5887354, at *4 ("The additional evidence provided by the plaintiff does not provide any new information that would tip the scales in the plaintiff's favor."). Although Plaintiff's EMG and NCS revealed he had several conditions, Dr. Rani reviewed the report and continued to recommend conservative treatment. (*See, e.g.*, Tr. 17 ("Right sensory carpal tunnel, bilateral ulnar neuropathy. Discussed conservative treatment including hand exercises, using braces for wrist and the elbow over-the-counter on regular basis and if no improvement, suggested seeing hand surgeon to discuss surgical options.")[13]

Based on the foregoing, the Court finds the ALJ supported his conclusion with specific citations to the record, and Plaintiff's newly submitted evidence does not detract from the ALJ's findings. The Court thus holds the ALJ did not err in formulating Plaintiff's RFC and determining whether Plaintiff is disabled.

### VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 31, 2020, through the date of this decision." (Tr. 25)

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

---

[12] Plaintiff does not assert that the RFC determination is unsupported absent consideration of the newly submitted evidence.
[13] Dr. Rani also opined that Plaintiff may have underlying small fiber neuropathy. (Tr. 17) She discussed the option of undergoing a skin biopsy to confirm such, but Plaintiff declined. (*Id.*)

15

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of February, 2024.